**IT IS SO ORDERED.**

**Dated: 04:26 PM November 12 2009**

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 09-53635 |
| | ) | |
| INVESTMENT C&R CO. LLC, | ) | CHAPTER 11 |
| | ) | |
| DEBTOR. | ) | JUDGE MARILYN SHEA-STONUM |
| | ) | |
| | ) | OPINION ON ORDER GRANTING MOTION |
| | ) | FOR AUTHORITY TO OBTAIN CREDIT |
| | ) | UNDER SECTION 364(d) [DOCKET #38] |
| | ) | AND DENYING MOTION FOR STAY |
| | ) | PENDING APPEAL [docket #52] AND |
| | ) | MOTION FOR LEAVE TO FILE NOTICE OF |
| | ) | APPEAL [docket #51] |

This matter is before the Court on the Debtor's Motion for Authority to Obtain Credit Under Section 364(d) [docket #38] ("364 Motion") filed by Investment C&R Co. LLC ("C&R" or "Debtor") and an objection [docket #42] filed by The Home Savings & Loan Company of Youngstown Ohio ("Home Savings"). The party that has agreed to provide the financing is an affiliate of the Debtor, K. Hovnanian Developments of Ohio, Inc. ("Lender"). Also before the Court is the matter of Home Savings Motion for Leave to File Notice of Appeal [docket #51] and a Motion to Stay Pending Appeal the Enforcement of Interim Post-Petition Financing Order [docket #52] (collectively the

"November 2nd Motions"), which the Court will now treat as a motion for stay of the final financing order. The Court held multiple hearings on these matters. Appearing at the hearing on these matters, held on October 8 and 13, 2009, were Howard Mentzer and John Mygrant, counsel for C&R; Suzana Koch (10/8) and Brodie Butland (10/13), counsel for Huntington Bank; R.J. Budway counsel for First Federal of Lorain; and Amanda Banner, counsel for Home Savings. Appearing at the hearing on these matters, held on November 6, 2009, were Howard Mentzer and John Mygrant, counsel for C&R; and Amanda Banner and Richard Thomas, counsel for Home Savings.

These proceedings arise in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. They are determined to be core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (K), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334. Based upon the arguments of counsel and testimony provided at the previous hearings and the pleadings on file, the Court makes the following findings of fact and conclusions of law.

## I. BACKGROUND FACTS

1. C&R and an affiliated company, Ontario Land Company ("Ontario"), each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 16, 2009 (the "Petition Date"). The cases of C&R and Ontario are being separately administered; however, the two cases overlap in certain aspects.[1]

2. C&R owns land that it is in the process of developing as a residential subdivision known as Herrington Place. Ontario owns, among other properties, residential subdivisions known as Arlington Place and Windsor Point. Home Savings financed the purchase of the raw land that is being developed into Herrington Place and Arlington Place. Huntington Bank ("Huntington")

---

[1] Due to the overlapping nature of the financing that the Debtor and Ontario are seeking, as necessary the facts in this opinion discuss properties owned by each debtor.

financed the purchase of Windsor Point raw land. The assets of the Debtor and Ontario include real estate parcels which are raw land and contract rights and other assets unique to real estate holdings.[2]

3. C&R and Ontario are engaged in the business of subdividing raw land into residential real estate lots and installing infrastructure improvements on those lots. Upon developing the lots at issue in the present cases, C&R and Ontario will sell the improved lots to an affiliated developer, the Lender, when the developer has an end purchaser.

4. The Debtor's ownership of Herrington Place is subject to the senior lien of Home Savings. Ontario's ownership of Arlington Place and Windsor Point are subject to the senior liens of Home Savings and Huntington, respectively.

5. The outstanding balance owing to Home Savings and secured by a first lien on Herrington Place is $2,175,000.00. The outstanding balance owing to Home Savings and secured by a first lien on Arlington Place is $2,940,817.91. The outstanding balance owing to Huntington and secured by a first lien on Windsor Point is $1,105,900.03.

6. C&R seeks to obtain debtor-in-possession financing ("DIP Financing") from the Lender, in order to develop the infrastructure on 55 residential lots, consisting of approximately 20 acres, out of the total of approximately 84 acres[3], in Herrington Place. Ontario seeks to obtain DIP Financing from Lender to develop 12 lots in Arlington Place and 20 lots in Windsor Point.

7. The amount that C&R and Ontario seek to borrow from Lender for the infrastructure

---

[2] The planned residential developments discussed herein are not the only properties that Debtor and Ontario own, but are the only three subject to the proposed DIP Financing from Lender. Ontario owns a variety of other subdivisions, either with no mortgage on those properties or mortgages obtained through other lenders. It is not unusual for a business in this field to obtain financing from numerous lenders.

[3] The 84 acres in Herrington Place is an approximate amount. In each of the three hearings, the parties gave three different figures for the acreage in Herrington Place. The Court notes that both C&R and Home Savings used the "approximately 84 acres" figure during the October 13, 2009 hearing.

improvements is $2,175,000.00, allocated as follows: $1,330,000.00 to develop the 20 acres in Herrington Place, $457,000.00 to develop Arlington Place, and $388,500.00 to develop Windsor Point. The financing offered by Lender is a package deal that includes all three subdivisions and contains a provision specifying the notes on Windsor Point and Arlington Place will be cross defaulted.

8. As a condition to the DIP Financing, the Lender requires that it be granted a priming lien to the extent of the real estate that is improved using the funds that Lender advances for the infrastructure improvements to Herrington Place, Arlington Place and Windsor Point.

9. Home Savings will continue to have a first lien on the majority of the acreage (64 acres) of Herrington Place and the majority of the unsold lots and raw land at Arlington Place. In addition, Home Savings will have a second lien on the lots that are improved with the DIP Financing proceeds. Huntington will continue to have a first lien on the portions of Windsor Point that are not subject to the DIP Financing and a second lien on the lots that have been improved with the DIP Financing proceeds.

10. Home Savings objected to the DIP Financing, arguing that Home Savings' interests in both Herrington Place and Arlington Place are not adequately protected. Huntington has not objected to Lender taking a priming lien for the monies advanced for infrastructure improvements on the land within Windsor Point.

11. As a condition of its authorization to the Debtor to go forward with the DIP Financing, insofar as the properties on which Home Savings has first liens, this Court requires that the lien rights of the Lender will not spring immediately upon the Debtor and Ontario entering into the DIP Financing agreements, but will attach incrementally as Debtor and Ontario make infrastructure

improvements. Because Huntington did not oppose the DIP Financing, this Court does not require the priming lien to attach incrementally to the infrastructure improvements that Ontario makes to the lots in Windsor Point.

12. As of November 6, 2009, the Debtor and Ontario expended approximately $590,000 of the DIP Financing on work in the three projects, including sewer and paving improvements. The Debtor estimated that the paving would be complete in Arlington Place and Herrington Place by November 13, 2009, which would result in additional DIP Financing monies being expended.

13. The 364 Motion, as originally submitted, contained a cross-default provision between Herrington Place, Arlington Place and Windsor Point. In light of Home Savings' objection, this Court found that a cross-default provision was inappropriate when the provision applied to two separate debtors. As noted above, the Debtor adjusted the relief sought in the 364 Motion, and accordingly the terms of the 364 Motion were changed to reflect that the DIP Financing was cross defaulted only on the notes of Arlington Place and Windsor Point.

14. The Court entered an interim order granting the 364 Motion on October 21, 2009 [docket #47] and a memorandum opinion on October 29, 2009 [docket #49].

15. On November 2, 2009, Home Savings filed the November 2nd Motions.

16. The Court held a hearing on November 6, 2009 to consider the November 2nd Motions and, after determining that neither party had additional evidence to adduce at final hearing, heard final arguments on the 364 Motion. Accordingly, this opinion and resulting order will constitute the Court's final order on the 364 Motion.

17. As noted, at the November 6, 2009 hearing, the Court asked both the Debtor and Home Savings whether either party would have additional evidence to offer if a final hearing for a

-5-

09-53635-mss    Doc 55    FILED 11/12/09    ENTERED 11/13/09 07:27:18    Page 5 of 13

future date was scheduled regarding the 364 Motion. The Debtor and Home Savings each responded that it had to no additional evidence or valuation testimony to offer at that time. Because the Debtor and Home Savings each indicated that it had no further evidence or valuation testimony to offer if a final hearing were to be conducted, the Court held that it was prepared to decide whether a final order was appropriate.

18. Upon hearing arguments at the November 6, 2009, the Court held that it would issue a final order granting the 364 Motion during the week of November 9, 2009. The Court advised the Debtor and Home Savings that the interim order would remain in effect until the issuance of the final order.

19. At the November 6, 2009 hearing, the Court denied both November 2nd Motions and now memorializes that ruling in this opinion and resulting orders.

## II. FINDINGS OF FACT

In addition to the above background facts, the Court makes the following findings of fact:

1. Based upon the approximately $30,000 difference in value between a developed lot in Herrington Place and an undeveloped lot in Herrington place, the 55 lots will increase in value by approximately $1.4 million to $1.55 million after the infrastructure improvements are made. The Court also notes that the average tax valuation of the improved lots in Phase I of Herrington Place is $67,000.

2. Home Savings will benefit from the time value of money when the Debtor makes accelerated payments to Home Savings equal to 133% of the pro rata per lot loan, upon the sales of each lot in Herrington Place.

3. The Court finds the recent sales history in Herrington Place to be compelling. The

09-53635-mss    Doc 55    FILED 11/12/09    ENTERED 11/13/09 07:27:18    Page 6 of 13

Debtor provided testimony that it sold 21 out of 22 homes in Phase I since April of 2009 and 7 of the 55 lots in Phase II that will be improved with the DIP financing have been sold since preselling began in August 2009. The Court believes that the sales history of lots in Herrington Place further demonstrates that the infrastructure improvements will increase the value of that real estate so as provide adequate protection to Home Savings.

4.  The value of the remaining 64 acres in Herrington Place will increase due to the infrastructure improvements being brought to the edge of the previously land-locked undeveloped land. Additionally, the Debtor will install sewer through a portion of the undeveloped acreage.

5.  The Court recognizes that while Herrington Place is not targeted towards first-time homebuyers, tax benefits enacted on November 6, 2009, extending the first-time homebuyer credit also expanded the credit to include purchasers of replacement homes. Herrington Place is at the price point to target such "step-up" buyers.

### III. THE 364 MOTION

The Debtor seeks authority to proceed with the DIP Financing pursuant to Section 364(d) of the Bankruptcy Code. Section 364(d) provides that

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if--
>
>> (A) the trustee is unable to obtain such credit otherwise; and
>>
>> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In a hearing under this subsection, the trustee has the burden of proof on the issue of

adequate protection.

For the reasons that follow, this Court finds that C&R has met the requirements to obtain DIP Financing from the Lender.

### A. C&R is Unable to Obtain Such Credit Otherwise

This Court is authorized, after notice and a hearing, to permit a debtor in possession to obtain credit secured by a lien on encumbered property that is senior or equal to any existing lien on the property. 11 U.S.C. § 364(d)(1). There is little guidance as to the quantity or quality of evidence that a debtor must provide in establishing an inability to obtain alternate financing as a required by § 364 (d)(1)(A). *Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683, 693 (Bankr. E.D.N.C. 2009). A debtor's testimony alone may be sufficient to satisfy this requirement. *Id.*, (citing *In re Antico Mfg. Co.*, 31 B.R. 103, 105 (Bankr. E.D.N.Y. 1983)). Mr. Oster, a manager of C&R, testified that C&R was unable to obtain alternative financing without providing the new creditor superpriority status. This Court finds the testimony of Mr. Oster credible, especially when considered in the context of current economic conditions.

### B. Home Savings' Interests are Adequately Protected

Home Savings argues that it will not be adequately protected if this Court grants Lender a priming lien to the extent of the $1,330,000.00 necessary for C&R to make the infrastructure improvements on the 55 lots in Herrington Place.[4] This argument is not well taken. "Adequate

---

[4]In its Motion for Leave to Appeal, Home Savings argues that the infrastructure improvements to the lots only increase the value of the lots in Herrington Place and Arlington Place by $716 and $214, respectively. This is an incorrect statement of facts presented at the October 13, 2009 hearing. The $716 and $214 figures are the amount that Home Savings' position in the remaining undeveloped lots (not subject to the priming liens of K. Hovnanian) will improve by after Ontario and C&R repay Home Savings on an accelerated basis for the lots subject to the DIP Financing.

protection" is a flexible standard that must be evaluated by the court on a case-by-case basis. *See* 11 U.S.C. § 361. *See also, e.g., Lend Lease, a Div. of Nat'l Car Rental Systems, Inc. v. Briggs Trans. Co. (In re Briggs Trans. Co.)*, 780 F.2d 1339, 1348 (8th Cir. 1985). Though cash payments and replacement liens are its more common forms, the definition of "adequate protection" allows a court to fashion relief that will result in the realization of the indubitable equivalent of an entity's interest in property. 11 U.S.C. § 361(3). The Court notes that in this case, cash payments are present, as the Debtor agreed that when the lots improved with the DIP Financing are sold in Herrington Place the Debtor will pay Home Savings an accelerated payment equivalent to 133% of the pro rata amount loaned per lot, with that amount also serving to release Home Savings' lien on the particular lot.

In the present case, the Court finds that the 55 lots will increase in value as a result of the infrastructure improvements that C&R will make. While courts have held that continued construction based on projections and improvements to the property does not alone constitute adequate protection, *Resolution Trust Corp. V. Swedeland Dev. Group (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 556 (3rd Cir. 1994) (citing *Town of Westport v. Inn at Longshore,* 32 Bankr. 942, 946 (Bankr. D. Conn. 1983)), this Court believes that, in the present case, the transformation of raw land into improved lots ready for construction will provide Home Savings with adequate protection. Improved land is more valuable than raw land. Mr. Rossi, Home Savings' expert witness, acknowledged this fact in his valuations of the currently improved lots as compared to the raw acreage in Herrington Place. Further, Mr. Rossi offered a hypothetical scenario in which the 20 acres in Herrington Place would increase nearly 25% in net present value[5] upon C&R improving such land.

---

[5] Mr. Rossi valued the approximately 84 acres of raw land at $30,000 per acre. He then offered a figure which valued the 20 acres that were split off to develop Phase II of Herrington Place at $760,000 ($37,000 per acre) once developed. The Court notes that the record evidence supports a view of the per acre value of raw land at Herrington Place is more appropriately viewed to be approximately $22,000 to $25,000 per lot, while the nominal

-9-

The testimony of the Debtors' witness, Mr. Oster, also demonstrates the difference in value between unimproved lots and improved lots. Mr. Oster testified that the Debtor previously contracted to sell undeveloped lots in Herrington Place for $22,000 per lot. Once the lots in Phase II of Herrington Place are improved using the DIP financing funds[6], and an end buyer is in place, K Hovnanian will purchase the improved lots for $52,400[7]. This number clearly shows that there is an increased value in the improved lots. Additionally, the tax valuation on the improved lots in Phase I of Herrington Place averaged $67,000 – over three times as high as the previous contract price to sell unimproved lots. Further, Mr. Oster testified that lots in Herrington Place are 27% larger than the lots in a neighboring development, yet a competing home builder was still paying approximately $55,000 per lot in the neighboring development.

Finally, this Court believes that as roads and developed infrastructure are brought to the edges of the land in Herrington Place that will remain undeveloped, that undeveloped land will increase in value because of the extension of infrastructure to what was previously land-locked property. In addition, the sewer will be immediately extended through portions of what is now raw acreage. Based on the foregoing, this Court finds that the improvements to the 20 acres in Herrington Place will increase the value of the land by an amount that the record evidence shows to be between $1.4 million and $1.55 million. Therefore, Home Savings is provided with adequate protection.[6]

---

value of the improved lots will be greater than $50,000.

[6]The approximate cost to improve each lot is $25,000.

[6] Additionally, the Court distinguishes the present case from *Swedeland*, which dealt with a residential subdivision where the lots were not selling. In his October 8, 2009 testimony, Mr. Oster testified that in Herrington Place, 21 out of 22 homes were sold since April of 2009. In Phase II of Herrington Place, 7 of the 55 lots that will be improved with the DIP financing have been sold since preselling began in August 2009. The Court believes that this sales history distinguishes this case from the "stalled" residential subdivision in *Swedeland*.

-10-

## IV. THE NOVEMBER 2nd MOTIONS

### A. The Motion for Stay Pending Appeal is Denied

In order to issue a stay pending an appeal, a court must consider four factors: "1. the likelihood that the part seeking the stay will prevail on the merits of the appeal; 2. the likelihood that the moving party will be irreparably harmed absent a stay; 3. the prospect that others will be harmed if the court grants the stay; and 4. the public interest in granting the stay." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). For the reasons stated in this opinion, this Court doubts that Home Savings will prevail on the merits of the appeal, as this Court found that Home Savings is adequately protected.

Second, Home Savings argues that it will be irreparably harmed if the stay is not granted. Home Savings argues that the Lender will be protected by 364(e) to the extent of the DIP Financing Funds that were extended in good faith. Home Savings has not provided evidence of irreparable harm (nor any evidence that the Lender is not proceeding in good faith), as the Debtor will repay Home Savings upon the sales of the Herrington Place lots.

The Debtor will be harmed if the Court grants the stay. Based on the testimony at the October 8, 2009 hearing, the Debtor was seeking the DIP Financing in order to make infrastructure improvements before the winter. If the stay were granted, construction would be interrupted and delayed, which would result in the Debtor not selling homes, not paying its creditors (including Home Savings) and not meeting its other obligations, including to families contracting to purchase lots for home construction.. Further, a delay in construction may result in the Debtor not being able to sell homes while the extended homebuyer credit is in effect, which could have a significant impact on

-11-

sales.[7]

Finally, Home Savings argues that public interest would favor granting a stay and argues that lenders must be afforded adequate protection before super-priority liens are granted in a bankruptcy action. Because this Court found that Home Savings is adequately protected, as discussed *supra*, this argument is not well taken.

The Motion for Stay Pending Appeal should only be granted if the moving party has met the requirements of the four-part test established in *Michigan Coalition of Radioactive Material Users*. Home Savings has failed to meet the requirements of that test. Accordingly, this Court denies the Motion for Stay Pending Appeal.

**B. The Motion for Leave to File a Notice of Appeal is Denied**

Home Savings filed a Motion for Leave to File Notice of Appeal, in order to appeal the interim order. The Court stated at the November 6, 2009 hearing, that granting such a motion would waste judicial resources. At the November 6, 2009 hearing, the Court noted that it would approve a final order on the 364 Motion– thus making the Motion for Leave to File Notice of Appeal for the interim order moot. In addition, the Court noted that Home Savings' rights to appeal are preserved insofar as the final order.

**V.    CONCLUSION**

Based upon the foregoing the Court finds that C&R's Motion for Authority to Obtain Credit

---

[7]At the November 6, 2009 hearing, the Court took judicial notice that the first-time homebuyer credit may be extended. The credit was in fact extended on November 6, 2009. Pursuant to the terms of the credit, an eligible homebuyer must buy, or enter into a binding contract to buy, a principal residence on or before April 30, 2010 and close on the home by June 30, 2010. If the Debtor cannot make improvements on the lots before the winter, resulting in delayed construction of the homes in Herrington Place, it is likely that potential homebuyers may not meet the aforementioned deadlines. The Court takes notice of the success of the first-time homebuyer credit, and believes that a potential homebuyer may opt to purchase in another development if he or she was able to receive the credit for buying in that lot and not in Herrington Place.

09-53635-mss    Doc 55    FILED 11/12/09    ENTERED 11/13/09 07:27:18    Page 12 of 13

Under Section 364(d) is well taken and such motion is hereby GRANTED as a final order as follows: with respect to Herrington Place, the priming lien will be incrementally effective, and will only be valid to the extent of infrastructure improvements that C&R has actually made. This Court believes that this modification is permissible under Chapter 11 of the Bankruptcy Code. Additionally, Home Savings Motion to Stay Pending Appeal and Motion for Leave to File Notice of Appeal are DENIED for the foregoing reasons.

# # #

cc (*via* electronic mail):

AMANDA BANNER, Counsel for The Home Savings & Loan Company of Youngstown Ohio
SUZANA KOCH, Counsel for Huntington Bank
HOWARD E MENTZER, Counsel for Debtor
JOHN MYGRANT, Counsel for Debtor